

In The Court of Common Pleas
Stark County, Ohio

| | | |
|---|---|---|
| PATRICIA KRIDLER, Surviving Widow and Representative of the Estate of David Kridler<br>2160 Blenheim Ave.<br>Alliance, OH 44601<br><br>      Plaintiff,<br><br>VS.<br><br>ASHLAND, INC., formally known as and as successor to Ashland Oil, Inc.<br>Ct Corporation System<br>36 E. 7th Street, Suite 2400<br>Cincinnati, OH 45202<br><br>CHAMPAIGN LANDMARK, INC.<br>John T. Dunbar<br>304 Bloomfield Ave.<br>Urbana, OH 43078<br><br>MONSANTO<br>Csc-Lawyers Incorporating Service<br>(Corporation Servicing Company)<br>50 W. Broad St., Suite 1800<br>Columbus, OH 43215<br><br>TRANSUE & WILLIAMS STAMPING CORPORATION<br>HI Statutory Agent, Inc.<br>200 Public Square, Suite 2800<br>Cleveland, OH 44212<br><br>SUNOCO, INC.<br>Ct Corporation System<br>1300 E. 9th Street<br>Cleveland, OH 44114<br><br>UNIVERSAL COOPERATIVES, INC.<br>The Prentice-Hall Corporation System, Inc.<br>50 W. Broad St.<br>Columbus, OH 43215 | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No. 2009CV02389<br><br>Judge: Sinclair<br><br>**COMPLAINT**<br>(Personal Injury, Wrongful Death, Intentional Tort)<br><br>Jury Demand Endorsed Hereon |

| | |
|---|---|
| John Doe, 1 through 100, inclusive Manufacturers, Sellers or Installers of Benzene-Containing Products (Names & Addresses unknown) | § § § § § § |
| Defendants. | § |

NOW COMES PLAINTIFF, PATRICA KRIDLER, Surviving Widow and Representative of the Estate of David Kridler, complaining of Defendants named below, and for causes of action, would respectfully show this Court the following:

1) Plaintiff Patricia Kridler is a resident citizen of the city of Alliance, county of Stark, state of Ohio.

2) ASHLAND, INC. is a Kentucky corporation with an agent for service or process in Ohio, to-wit: ASHLAND, INC. is subject to service or process in the state of Ohio. This Defendant has been sued as a Product Defendant.

3) SUNOCO, INC. is a Pennsylvania corporation with an agent for service or process in Ohio, to-wit: SUNOCO, INC is subject to service or process in the state of Ohio. This Defendant has been sued as a Product Defendant.

4) MONSANTO is a Delaware corporation with an agent for service or process in Ohio, to-wit: MONSANTO is subject to service or process in the state of Ohio. This Defendant has been sued as a Product Defendant.

5) UNIVERSAL COOPERATIVES is a Minnesota corporation with an agent for service or process in Ohio, to-wit: UNIVERSAL COOPERATIVES is subject to service or process in the state of Ohio. This Defendant has been sued as an Employer Defendant.

6) TRANSUE & WILLIAMS STAMPING CORPORATION is an Ohio corporation with an agent for service or process in Ohio, to-wit: TRANSUE & WILLIAMS STAMPING CORPORATION is subject to service or process in the state of Ohio. This Defendant has been sued as an Employer Defendant.

7) CHAMPAIGN LANDMARK, INC. is an Ohio corporation with an agent for service or process in Ohio, to wit: CHAMPAIGN LANDMARK, INC. is subject to service or process in the state of Ohio. This Defendant has been sued as an Employer Defendant.

8) Plaintiff is informed and believes that Defendants are corporations organized and existing under the laws of the State of Ohio, or of some other state of the United States of America, or of some foreign jurisdiction, and that said Defendants are conducting and regularly conduct business in the State of Ohio. The Defendants used, manufactured, supplied and/or distributed benzene and/or benzene-containing products in such a manner that caused injury to Plaintiff's Decedent. The real names and addresses of defendants John Does 1-100 manufacturers, sellers or installers of benzene-containing products have not been determined, despite reasonable efforts of the plaintiff to do so.

9) The above entities are hereby referred to as "Defendants."

## JURISDICTION AND VENUE

10) Both jurisdiction and venue are proper because Plaintiff was exposed to chemicals and solvents used, distributed, manufactured and/or marketed at the premises of Transue & Williams Stamping Corp., and Universal Cooperatives, their predecessors in interest, and other defendants who maintain a principal office in Ohio and in this county. Venue is therefore proper against all Defendants, because Plaintiff's claims against all Defendants

arise out of the same series of transactions or occurrences that gave rise to Plaintiff's claims.

11) This Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court.

12) Plaintiff's Decedent David Kridler worked at Universal Cooperatives, Inc. (FKA United Cooperatives, Inc.) from approximately 1969 to 1974 in Ohio. He further worked at Transue & Williams Stamping Corporation from 1974 To 1990 During this entire time, Plaintiff's Decedent was exposed to benzene-, toluene-, ethylbenzene-, xylene-, cumene-, napthene (naptha)-, styrene-, butadiene-, ethylbenzene-, petroleum distillates-, parrifin-, mineral spirits-, nitrobenzene-, acetone-, and/or their chemical derivatives and equivalents (hereinafter referred to as "BTEX" or simply "benzene") containing products, lubricants, cleaners, paints, paint thinners, paint strippers, solvents, and chemicals distributed, marketed, and/or manufactured by Defendants. This exposure was a legal cause of his acute myeloid leukemia made the basis of this lawsuit.

## COUNT ONE – INTENTIONAL TORT

13) Plaintiff re-alleges and incorporates each and every paragraph set forth above, as though fully set forth here.

14) At all times mentioned herein, Defendants and/or their predecessors owned and operated facilities located in Ohio.

15) Plaintiff states that at certain times relevant hereto Plaintiff's Decedent was an employee of the aforesaid Defendant working at said employer's manufacturing facilities in Ohio.

16) While employed at said Ohio manufacturing facilities, Plaintiff's Decedent was exposed to numerous benzene and benzene-containing products and, as a result of such exposure,

sustained the disease acute myeloid leukemia (AML).

17) Defendants had knowledge of a dangerous process and/or procedure and/or instrumentality and/or condition within its business operations, to wit: the presence of benzene and benzene-containing products in their Ohio facilities, the dangers of benzene, and the risks of serious diseases that are caused by exposure to benzene, including but not limited to acute myeloid leukemia (AML).

18) Defendants intentionally and/or with knowledge that injury was substantially certain to occur failed to provide adequate protection and/or warning and/or training for Plaintiff's Decedent and other employees and allowed hazardous and dangerous conditions and/or instrumentalities and/or procedures and/or processes to exist which directly and proximately caused the serious and irreversible diseases sustained by Plaintiff's Decedent.

19) Defendants maliciously and/or wantonly and/or willfully allowed this hazardous, dangerous condition to exist which directly and proximately caused the serious and irreversible diseases of Plaintiff's Decedent.

20) Defendants had knowledge of this hazardous and dangerous condition and intentionally and/or with the belief that injury was substantially certain to occur and/or maliciously and/or wantonly and/or willfully failed to correct or prevent said dangerous condition or to protect and warn Plaintiff's Decedent and other employees of the dangerous condition which directly and proximately caused the serious and irreversible disease of Plaintiff's Decedent.

21) Defendants had actual knowledge of the hazardous conditions and/or instrumentalities

and/or processes and/or procedures described herein and its failure to take action constitutes willful, wanton, and intentional misconduct, subjecting said Defendants to the imposition of punitive damages

## COUNT TWO – NEGLIGENCE

22) Product Defendants are liable for manufacturing, selling, marketing, distributing, designing, and/or placing in the stream of commerce products that were defective, hazardous and/or carcinogenic. Product Defendants are liable in their capacity as suppliers, manufacturers, and entities that marketed hazardous chemicals or substances.

23) Defendants were aware, or should have been aware, of the dangers associated with exposure to the hazardous chemicals and substances at the premises where Plaintiff's Decedent worked. Nevertheless, Defendants failed to timely and fully inform David Kridler of the dangers associated with occupational exposure to these chemicals, and required Plaintiff's Decedent to work with or in proximity to hazardous substances without the necessary precautions to avoid dangerous exposures to these chemicals.

24) Plaintiff would show that Plaintiff's Decedent was exposed to a deadly situation by all the Defendants in this case. Plaintiff alleges, as more specifically set out below, that Plaintiff's Decedent contracted an illness, and such illness was proximately caused by the Defendants' negligent acts, and by his exposure to products designed, produced, manufactured, marketed, placed into the stream of commerce, or sold or used by Defendants.

25) Plaintiff's Decedent's illness and the damages sustained by the Plaintiff's Decedent and Plaintiff are a direct and proximate result of the negligence of each Defendant or, where applicable, the employee or the agent of one or more Defendants.

26) Defendants were negligent in the following respects, among others, and such negligence was the proximate cause of the pain, suffering and illnesses of Plaintiff's Decedent and of the damages sustained by Plaintiff and Plaintiff's Decedent.

   a. Defendants knew or should have known that the products they utilized, distributed, marketed, and/or manufactured, including BTEX- and benzene-containing products, were deleterious, poisonous, carcinogenic, and highly harmful to the body and health of Plaintiff's Decedent; notwithstanding which, Defendants failed to take any precautions or to warn Plaintiff's Decedent of the dangers and harm to which he was exposed while handling these products;

   b. Defendants knew or should have known that products used by or in proximity to Plaintiff's Decedent, including BTEX- and benzene-containing products, were carcinogenic, deleterious, and highly harmful to his body and health and that Plaintiff's Decedent would not have known of such dangerous properties; notwithstanding which, the Defendants failed to provide Plaintiff's Decedent with sufficient knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances to protect him from being damaged by exposure to such products;

   c. Defendants knew or should have known that the products used by or in proximity to Plaintiff's Decedent, including BTEX- and benzene-containing products, contained carcinogenic and highly harmful substances to the human body and health; notwithstanding which, the Defendants failed to take any precautions or to exercise care by placing any warnings or cautions on the containers of such products or the products themselves to warn the handlers thereof of the dangers to health in coming into contact with these products;

   d. Defendants knew or should have known that the products used by or in proximity to Plaintiff's Decedent contained deleterious and carcinogenic substances; notwithstanding which, the Defendants failed to take reasonable care to warn the Plaintiff's Decedent of said danger and/or to instruct the Plaintiff's Decedent in the proper handling of said products or to take proper precautions or exercise care to protect the Plaintiff's Decedent from harm, and failed to timely adopt and enforce any safety plan and method of handling these dangerous products;

   e. Defendants knew or should have known that the products they introduced into the stream of commerce were carcinogenic and Defendants failed to adequately warn;

   f. Defendants failed to medically monitor Plaintiff's Decedent; and

    g.    Defendants supplied products with marketing, design, and/or manufacturing defects.

## COUNT THREE - STRICT LIABILITY

27) All of the allegations contained in the previous paragraphs are re-alleged herein.

28) Plaintiff's Decedent was an end-user of Defendants' products made the basis of this lawsuit and that are the legal cause of Plaintiff's Decedent's illness and resulting death. Plaintiff's Decedent was an end-user of Defendants' products made the basis of this lawsuit and that are the legal cause of Plaintiff's Decedent's illness and resulting death. The products and/or materials to which Plaintiff's Decedent was exposed, including BTEX- and benzene containing materials, were designed, produced, manufactured, marketed, sold and/or otherwise put into the stream of commerce by Defendants, and were used for their intended purpose. Plaintiff would further show that the products in question were defective and not reasonably fit for the purposes and uses for which they were intended at the time they left the hands of the Defendants in that the products were unreasonably dangerous for their intended use and Defendants failed to give the users adequate warnings or instructions concerning product dangers that were known or should have been known to the Defendants by the application of reasonably developed skill and foresight. This failure to warn on the part of the Defendants rendered such products unreasonably dangerous at the time they left the hands of the Defendants and were the proximate cause of the illness of Plaintiff's Decedent and resulting injuries, disabilities, and damages sustained by Plaintiff's Decedent.

## COUNT FOUR - BREACH OF WARRANTY

29) All of the allegations contained in the previous paragraphs are re-alleged herein.

30) Plaintiff's Decedent was an end-user of Defendants' products made the basis of this lawsuit

and that are the legal cause of Plaintiff's Decedent's illness and resulting death. The Defendants were merchants with respect to their BTEX- and benzene-containing products. In connection with the manufacture, design, assembly, sales, supply, delivery, handling, marketing, advertising and instructing in the use of BTEX- and benzene-containing products, Defendants warranted, either expressly or impliedly, that their products were merchantable, when in fact they were not. These products were unfit for the ordinary purposes or uses for which their products were intended, including their use and handling by human beings. Further, these Defendants breached express and implied warranties under the Ohio Uniform Commercial Code.

## COUNT FIVE - MISREPRESENTATION AND CONSPIRACY

31) All of the allegations contained in the previous paragraphs are re-alleged herein.

32) In addition, Defendants misrepresented material facts concerning the character or quality of their BTEX- and benzene-containing products upon which Plaintiff's Decedent relied, and, therefore, are liable to Plaintiff.

33) Furthermore, Plaintiff would show that the Defendants individually, as agents of one another, and as co-conspirators, agreed and conspired among themselves and with other BTEX and benzene manufacturers, purchasers, and users and distributors to injure Plaintiff's Decedent. These Defendants entered into a conspiracy to withhold medical scientific information; to have material facts about the seriousness of BTEX- and benzene-related diseases misstated and misrepresented; to delete material information from studies and reports; to disseminate misleading information; to prevent the disclosure of medical and scientific information; to alter studies and reports and terminate studies that would prove unfavorable to them.

Defendants entered into a meeting of minds on these unlawful objects, and committed one or more unlawful, overt acts in support of their conspiracy. Defendants committed such acts and withheld such information. The acts of these conspirators constitute conspiracy, fraudulent concealment and/or a fraudulent misrepresentation, which proximately caused injury to Plaintiff's Decedent. As such, Defendants' conduct constitutes civil conspiracy fraud and malice as those terms are defined by law.

### COUNT SIX - CONCERT OF ACTION

34) All of the allegations contained in the previous paragraphs are re-alleged herein. This count is applicable to all Defendants.

35) Defendants acted in concert pursuant to a common plan, design or agreement to injure Plaintiff's Decedent. In carrying out their common plan, design or agreement, Defendants gave substantial assistance and encouragement to one another. Defendants entered into a conspiracy to withhold medical scientific information; to have material facts about the seriousness of BTEX- and Benzene-related diseases misstated and fraudulently misrepresented; to delete material information from studies and reports; to disseminate misleading information; to fraudulently conceal medical and scientific information; and to alter studies and reports and terminate studies that would prove unfavorable to them. Defendants acted in concert in their common plan, design or agreement and participated in intentional acts in carrying out that plan, design or agreement. Theses intentional acts, including conspiracy, fraudulent concealment and/or fraudulent misrepresentation, were committed in concert as part of Defendants' common plan, design or agreement, and proximately caused injury and/or death to Plaintiff's Decedent.

## COUNT SEVEN – LOSS OF CONSORTIUM

36) Plaintiff re-alleges and incorporates each and every paragraph set forth above, as though fully set forth here.

37) Plaintiff has suffered a loss of consortium and has been deprived of the society, companionship, and assistance of her spouse.

## COUNT SEVEN – PUNITIVE DAMAGES

38) Plaintiff re-alleges and incorporates each and every paragraph set forth above, as though fully set forth here.

39) Plaintiff is informed and believes that the Defendants named herein and their predecessors in interest researched, tested, manufactured, labeled, marketed, used, distributed and sold products described as set forth above with conscious disregard for the safety of Plaintiff's Decedent and other users of said products, in that said Defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to their products or products in their premises aforesaid, including, but not limited to, Acute Myeloid Leukemia (AML). Said knowledge was obtained, in part, from scientific studies and medical data to which Defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of, said Defendants, and which knowledge was obtained by said Defendants during the time said Defendants manufactured, distributed, used or sold their said products.

40) During the time said Defendants manufactured, distributed, used, or sold their said products, Defendants were aware that Plaintiff's Decedent and other members of the general public who would be exposed to their products had no knowledge or information that said products could cause injury, and Defendants knew that Plaintiff's Decedent and other users of said products, as well as members of the general public who were exposed

to said products, would assume, and in fact did assume, that exposure to said products was safe, when in fact said exposure was extremely hazardous to human life.

41) Despite this knowledge, Defendants opted to manufacture, distribute, use, and sell said products without attempting to protect Plaintiff's Decedent and other users from, or to warn Plaintiff's Decedent and other users of, the high risk of injury and death resulting from exposure to said products. Rather than attempting to protect Plaintiff's Decedent and other users from, or warn Plaintiff's Decedent and other users of, the high risk of injury or death resulting from exposure to their benzene and benzene-containing products, said Defendants failed to reveal their knowledge of these risks, and intentionally, consciously, and actively concealed and suppressed this knowledge from members of the general public, Plaintiff's Decedent's employers and other users, thus impliedly representing to members of the general public, Plaintiff's Decedent's employers and other users that these benzene and benzene-containing products were safe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations and with a conscious disregard of the rights and safety of Plaintiff's Decedent and other users.

42) The above-referenced conduct of these Defendants was motivated by the financial interest of said Defendants in the continuing, uninterrupted distribution, use, and marketing of benzene and benzene-containing products. In pursuance of this financial motivation, said Defendants consciously disregarded the safety of Plaintiff's Decedent and other users of their benzene and benzene-containing products, and were consciously willing to permit said bezene and benzene-containing products to cause injury to frequenters, users, and bystanders, including Plaintiff's Decedent.

43) As the above-referenced conduct of said Defendants was and is willful, malicious, outrageous, and in conscious disregard and indifference to the safety of Plaintiff's

Decedent and other users of their benzene and benzene-containing products, Plaintiff therefore, for the sake of example, and by way of punishing these Defendants, seek punitive damages according to proof.

## **RELIEF SOUGHT**

44) As a direct and proximate result of Defendants' tortious conduct, Plaintiff has been damaged in the following particulars:

    a. Plaintiff has suffered a loss of love, affection, protection, emotional support, services, companionship, care, and/or society for which the law allows a recovery; and

    b. Plaintiff seeks punitive and exemplary damages.

45) Plaintiff seeks all elements of damages and all said damages in an amount that Plaintiff would show that they are entitled to at the time of trial. Plaintiff also seeks punitive or exemplary damages in an amount within the discretion of the jury sufficient to deter and punish Defendants. Finally, Plaintiff asserts a claim for costs of court and pre-judgment and post-judgment interest allowed under Ohio law.

46) The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting in the death of David Kridler and the following general and special damages that Plaintiff Patricia Kridler has sustained in her individual capacity; as Personal Representative of the Heirs and Estates of Decedent; and on behalf of the all Wrongful Death Beneficiaries.

    a. All damages allowed under Ohio's Wrongful Death and Survival Act, including without limitation damages to punish Defendants for proximately causing Decedent's untimely death;

    b. The conscious physical pain and suffering and mental anguish sustained by Decedent

      prior to his death;

c.     The physical impairment suffered by Decedent prior to his death;

d.     The disfigurement suffered by Decedent prior to his death;

e.     Reasonable and necessary medical expenses incurred by Decedent and his Estate;

f.     Loss of earning suffered by Decedent during his lifetime;

g.     Prior to the onset of his symptoms, Decedent was active and participated in numerous hobbies and activities, and as a result of his illness, Decedent was prevented from engaging in some of said activities which were normal for him prior to developing symptoms from BTEX- and Benzene-related illnesses. Decedent was otherwise prevented from participating in and enjoying the benefits of a full and complete life;

j.     Pecuniary loss, including the loss of care, maintenance, services, support, advice, counsel, and reasonable contributions of a pecuniary value which Plaintiff, as Wrongful Death Beneficiaries would have received from Decedent had he lived;

h.     Loss of companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, consortium, and society that Plaintiff would have received from Decedent had he lived;

i.     The mental anguish suffered by the Plaintiff as a consequence of observing the last illnesses and deaths of the Decedent;

j.     Loss of consortium with his family and/or spouse suffered by Decedent due to his BTEX- and Benzene-related illnesses and premature death;

k.     Plaintiff and/or any other proper Wrongful Death beneficiary seeks recovery for wrongful death and loss of consortium with Decedent which loss was caused by the above-alleged acts of Defendants. Plaintiff would therefore show that Defendants injured Decedent in a manner that subjects Defendants to liability and that because of those injuries she has suffered a loss of love, affection, protection, emotional support, services, companionship, care and/or society for which Ohio law allows a recovery; and

l.     Plaintiff seeks punitive and exemplary damages.

## WRONGFUL DEATH AND SURVIVAL ACTIONS

47) All of the allegations contained in the previous paragraphs are re-alleged herein.

48) The conduct of Defendants was a direct, proximate, and producing cause of the damages resulting from the diseases and wrongful deaths of Plaintiff's Decedent. As a result, Plaintiff seeks general and special damages including, but not limited to, damages for survival and wrongful death claims that Plaintiff sustained both in her individual capacity and as personal representative of the heirs and estate of Plaintiff's Decedent.

49) According to a normal life expectancy, Plaintiff's Decedent would have lived additional years. He had been a good provider. He was very close to his family, and provided them with regular monetary support; in addition he provided advice, counsel, comfort, care and protection.

50) Upon trial of this case, it will be shown that prior to Plaintiff's Decedent's death, he sustained injuries and damages as a proximate result of the Defendants' acts; and Plaintiff respectfully request the Court and Jury to determine the amount of loss Plaintiff's Decedent incurred in the past, not only from a financial standpoint, but also in terms of good health and freedom from pain and worry. There are certain elements of damages, provided by law, that Plaintiff is entitled to have the Jury consider separately when determining the sum of money for each element that will fairly and reasonably compensate the individual Plaintiff for the injuries and damages and losses incurred prior to Plaintiff's Decedent's death. From the date of the incident in question until the time of death, those elements of damages to be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff for each element are as follows:

1. Damages to punish Defendants for proximately causing Plaintiff's Decedent's untimely death;

2. The conscious physical pain and suffering and mental anguish sustained by Plaintiff's Decedent prior to his death;

3. The physical impairment suffered by Plaintiff's Decedent prior to his death;

4. The disfigurement suffered by Plaintiff's Decedent prior to his death;

5. Reasonable and necessary medical expenses incurred by Plaintiff's Decedent and his estate;

6. Reasonable funeral and burial expenses incurred by Plaintiff's Decedent's estate;

7. Decedent's lost earning and net accumulations;

8. The loss of the care, maintenance, services, support, advice, counsel and consortium that Decedent's heirs received from the Decedent prior to his last illness and death;

9. The mental anguish suffered by Plaintiff's and Decedent's heirs as a consequence of observing the last illness and death of the Decedent; and

10. Plaintiff seeks punitive and exemplary damages.

## CONCLUSION

WHEREFORE, Plaintiff demands that Defendants answer herein as the law directs, and that upon final hearing, this Court enter Judgment against all Defendants for actual, special and exemplary or punitive damages together with interest thereon at the legal rate, costs of court, and for other such additional and further relief, special and general, at law and in equity, which the Plaintiff shows just and proper in accordance with the law. Plaintiff demands relief in an amount greater than $25,000, jointly and severally, against all Defendants.

Respectfully submitted,

**BEVAN & ASSOCIATES, LP**

_____
Thomas W. Bevan (0054063)
Patrick M. Walsh (0075966)
John Mismas (0077434)
BEVAN AND ASSOCIATES
10360 Northfield Road
Northfield, Ohio 44067
Phone: (330) 467-8571
Fax: (330) 467-4493

**ATTORNEYS FOR PLAINTIFF**

## JURY DEMAND

Now come Plaintiffs, by and through counsel, and demand a trial by jury of the instant action.

_____
Thomas W. Bevan (0054063)
Patrick M. Walsh (0075966)
John Mismas (0077434)
BEVAN AND ASSOCIATES
10360 Northfield Road
Northfield, Ohio 44067
Phone: (330) 467-8571
Fax: (330) 467-4493